# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOEL RICH, <br><br> Defendant. | Case No. CR05-0049 <br><br> REPORT AND RECOMMENDATION |

_____

This matter comes before the court pursuant to the defendant's June 17, 2005, motion to suppress evidence (docket number 15). The court held an evidentiary hearing on this motion on June 27, 2005, at which the defendant was present and represented by Michael Lindeman. The government was represented by Assistant United States Attorney Ian Thornhill. It is recommended that the motion to suppress be denied.

In the motion to suppress, the defendant contends that statements made by him to the police on May 10, 2005, were given involuntarily and in violation of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The government contends that the defendant was appropriately given Miranda warnings, which he waived. Following the invocation of his right to counsel, the interview terminated. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On May 9, 2005, Cedar Rapids Police Officer Cory Peiffer went to the defendant's residence to speak with the defendant. The defendant was not home, but his grandmother informed the police that the defendant would contact them. The defendant called Investigator Peiffer and told him that he would come to the police department on May 10,

1

2005, after he got off work. The defendant specifically asked Investigator Peiffer whether he would be arrested at the completion of the interview. Investigator Peiffer specifically told the defendant that he could make no promises in that regard. The defendant told Investigator Peiffer that he needed to make arrangements for his daughter if he was going to be taken into custody.

The defendant came to the police station on May 10, 2005, as promised. There, he met with Investigator Peiffer and Detective Michael of the Benton County Sheriff's Department. Before the interrogation began, Investigator Peiffer asked the defendant a series of fifteen questions designed to determine the defendant's competence to give a voluntary statement. See Government's Exhibit 3.

After the defendant's personal information questionnaire had been filled out, the defendant was given Miranda warnings. The defendant read the Miranda warnings out loud. In the defendant's words, he believed that he was giving himself his own rights. He then explained those rights in his own words to Investigator Peiffer. He indicated that he understood those rights and signed the form as an indication of his willingness to speak with the police. A lengthy interrogation then commenced. It concluded when the defendant indicated that he wanted to have an attorney present. See Government's Exhibit 2.

May 10, 2005, was not the first occasion on which the defendant has given statements to the police. On October 17, 1987, the defendant was given his Miranda warnings, waived them, and gave a lengthy statement to the police. See Government's Exhibit 4.

At the suppression hearing in this matter, the defendant testified and confirmed virtually everything that Investigator Peiffer stated in his testimony. The defendant simply states that he thought that he was coming to the police station to give a statement about Dan Raplinger. Somehow, the defendant believes that he should not have been asked

2

questions about himself when he believed he was going to the police station to give statements about another.

The defendant's belief does not make sense. When he asked Investigator Peiffer on May 9, 2005, whether he was in trouble and would be arrested, Investigator Peiffer refused to give him any comfort whatsoever. Investigator Peiffer told him that he would make no promises to him in this regard. The defendant was obviously concerned about being taken into custody due to his concern over what would happen to his daughter if he was arrested. When he came to the police station, the police made sure that he was able to understand what he was doing. He was given his Miranda warnings and the defendant was able to paraphrase those warnings in a way that showed that he understood them. He then gave an explicit written waiver of those warnings and spoke to the police. He knew that he had the right to counsel because he invoked that right and terminated the interrogation. The police did nothing wrong here.

## CONCLUSIONS OF LAW

The government bears the burden of proving by a preponderance of the evidence that the defendant knowingly, voluntarily, and intelligently waived his rights. United States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993). If the government can establish that the suspect "knowingly, and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel," his statements elicited during questioning are admissible. Grubbs v. Delo, 948 F.2d 1459, 1466 (8th Cir. 1991) (citing Miranda v. Arizona, 384 U.S. 436, 475 (1966)). However,

> [w]hether a defendant waives his constitutional rights has two distinct inquiries. "First, the relinquishment of the rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986). "Second, the waiver must have been made with a full awareness of both the

3

> nature of the right being abandoned and the consequences of the decision to abandon it." Id.

United States v. Caldwell, 954 F.2d 496, 504 (8th Cir. 1992). Whether the defendant has waived his rights is examined in the totality of the circumstances and the entire course of police conduct, id. at 505 (citing Oregon v. Elstad, 470 U.S. 298, 318 (1985)), including the background, experience, and conduct of the accused. Barahona, 990 F.2d at 418. The defendant must be capable of understanding the warnings provided him and the consequences of his decision to waive his rights. Caldwell, 954 F.2d at 505 (citing Moran v. Burbine, 475 U.S. 412, 422 (1986)). A defendant has made a valid waiver of his rights where the defendant responded to questioning without invoking his rights to counsel or to remain silent, and no evidence of police coercion existed. Id. at 504. "[C]oercion can be mental as well as physical, and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." Arizona v. Fulminante, 499 U.S. 279 (1991) (quoting Blackburn v. Alabama, 361 U.S. 199, 206 (1960)).

### Voluntariness of Statements

In determining whether a statement is voluntary, the court must consider the totality of the circumstances. United States v. Bordeaux, 980 F.2d 534, 538 (8th Cir. 1992); United States v. Casal, 915 F.2d 1225, 1228 (8th Cir. 1990). 18 U.S.C. § 3501(b) provides:

> The trial judge in determining the issues of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and

4

(5) whether or not such defendant was within the assistance of counsel when questioned and when giving such confession.

In light of the totality of the circumstances, a statement is not voluntary if "pressures exerted upon the suspect have overborne his will." United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990) (citing United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989) for the "overborne will" test). The two factors that must be considered in applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." Id. (citing Jorgensen, 871 F.2d at 729; Colorado v. Connelly, 479 U.S. 157 (1986)). A statement is not constitutionally involuntary unless "the police extorted it from the accused by means of coercive activity." Jenner v. Smith, 982 F.2d 329, 333 (8th Cir. 1993) (quoting United States v. Rohrbach, 813 F.2d 142, 144 (8th Cir. 1987), cert. denied, 482 U.S. 909 (1987)). More recently, the Seventh Circuit Court of Appeals has stated:

> A confession is voluntary if, in light of the totality of the circumstances, the confession "was not secured through psychological or physical intimidation but rather was the product of a rational intellect and free will." We have in earlier cases found certain factors relevant to determining voluntariness: the age of the defendant, her education, the nature of the questioning, the use of physical punishment, whether the defendant was read her rights, the duration of the questioning, the defendant's prior experience with police, and whether the defendant was under the influence of drugs or alcohol.
>
> These factors must be assessed "from the perspective of a reasonable person in the defendant's position at the time of the statement," and in light of those factors.

United States v. Cichon, 48 F.3d 269 (7th Cir. 1995).

In the instant case, the defendant's claim that his May 10, 2005, statements to Inspector Peiffer and Detective Michael were involuntary lacks merit. Not only was the defendant made aware of his Miranda rights, including his ability to have an attorney

5

present, the defendant was administered a "Personal Information Questionnaire" by Inspector Peiffer prior to receiving his Miranda warnings. The purpose of the questionnaire, as stated by Inspector Peiffer during the defendant's June 27, 2005, suppression hearing, is to evaluate a defendant's ability to comprehend his or her Miranda rights. The defendant did not indicate anywhere on his questionnaire that he had any problems that would render him unable to fully comprehend his Miranda rights and voluntarily waive those rights if he so chose. As stated, the defendant was fully aware of his Miranda rights, for he freely admits that he was advised of and understood his rights when he was questioned in an unrelated matter in 1987. Thus, the Personal Information Questionnaire, coupled with the defendant's admitted understanding of his Miranda rights, convince this court that the defendant's statements on May 10, 2005, to Inspector Peiffer and Detective Michael were voluntary.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of this Report and Recommendation, that the defendant's motion to suppress be denied.

June 28, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[1] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.